U.S. DISTRICT COURT
02 JUL 12 PM 2:52
FILED FOR DOCKETING
ED-7

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED
JUL 1 5 2002

JOSEPH N. BARRETT IV and ALICIA GILBERT BARRETT

Plaintiffs,

vs.

GREATER ATLANTIC MORTGAGE CORPORATION and LANDAMERICA ONESTOP, INC.

Defendants.

Case No. 02 C 2625

Judge Wayne Anderson
Magistrate Edward A. Bobrick

**DEFENDANT LANDAMERICA ONESTOP, INC.'S**
**MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS**

Defendant LandAmerica OneStop, Inc. ("LandAmerica") files this Memorandum in Support of its Motion to Dismiss, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), and states as follows:

## I. INTRODUCTION

Plaintiffs Joseph N. Barrett IV and Alicia Gilbert Barrett (collectively, "Plaintiffs") filed this action asserting purported class claims and unique individual claims arising out of the refinancing of their home loan. Specifically, Plaintiffs have asserted purported class claims against LandAmerica for violations of section 2607(b) of the Real Estate Settlement Procedures Act ("RESPA") and its implementing regulation (24 C.F.R. § 3500.14(c)), violations of section 2 of the Illinois Consumer Fraud Act and section 59.1-200 of the Virginia Consumer Protection Act, and money had and received. (Complaint, pp. 6-13.) All of Plaintiffs' purported class claims against LandAmerica arise out of alleged overcharges for recording fees. (Complaint, pp. 2-4, 6-13.) Plaintiffs have also asserted an individual claim against LandAmerica for breach of its fiduciary duty



19

arising out of the remittance of Plaintiffs' property taxes. (Complaint, pp. 4, 14.)

In August 2001, Plaintiffs refinanced their home loan with Defendant Greater Atlantic Mortgage Corporation ("GAMC"), which transaction LandAmerica closed. (Complaint, Ex. F.) Plaintiffs allege that LandAmerica charged them $100.00 in fees to record their GAMC mortgage and $20.00 in fees to record the release of their prior mortgage. (Complaint, p. 3.) However, the Cook County Recorder required only $33.50 to record Plaintiffs' mortgage. (Complaint, p. 3.) Additionally, based on information and belief and exhibits to Plaintiffs' Complaint, which contain inconsistent information, Plaintiffs claim that LandAmerica did not record the release of their prior mortgage, but that Plaintiffs' prior lender, Wells Fargo, did. (Complaint, pp. 3-4, Ex. I.) Based solely on these actions by LandAmerica, Plaintiffs assert the purported class claims listed above.

Additionally, Plaintiffs allege that they incurred a penalty because their property taxes were not timely remitted to the appropriate taxing authorities. (Complaint, pp. 4, 14.) Based solely on the untimely remittance of such funds, Plaintiffs claim that LandAmerica breached its fiduciary duty.

## II. ARGUMENT

Plaintiffs' claims against LandAmerica should be dismissed for the following reasons: (1) RESPA and its implementing regulation do not prohibit a settlement service provider from charging unearned fees; (2) absent Plaintiffs' RESPA claim, there is no independent jurisdictional basis for Plaintiffs' state law claims against LandAmerica; (3) Illinois' Consumer Fraud Act does not apply to simple breach of contract actions; (4) Plaintiffs have failed to plead their consumer fraud claims with the requisite particularity; (5) LandAmerica's compliance with RESPA exempts it from liability for consumer fraud under Illinois' Consumer Fraud Act and Virginia's Consumer Protection Act; (6) regarding Plaintiffs' claim for money had and received, Plaintiffs failed to plead that LandAmerica itself retained any money; (7) Plaintiffs cannot base their claim for money had and

received upon an express contractual relationship; and (8) Plaintiffs failed to plead that LandAmerica owed it a fiduciary duty.

**A. Plaintiffs Cannot State a RESPA Claim.**

RESPA section 2607(b) states:

> [n]o person shall give and no person shall accept any *portion, split, or percentage* of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed.

12 U.S.C. § 2607(b) (emphasis added). This statute requires a rebate or kickback; a mere overcharge is not a violation.

**1. No Violation of 2607(b).**

The facts in this action are strikingly similar to those asserted by the plaintiffs in *Echevarria v. Chicago Title & Trust Co.*, a case decided by the Seventh Circuit in July 2001. 256 F.3d 623. In *Echevarria*, the plaintiffs alleged that Chicago Title violated RESPA section 2607(b) by charging them more to record their mortgages than the Cook County Recorder required. *Id.* at 624. Specifically, Chicago Title charged the Echevarrias $45.00 to record their mortgage. *See id.* However, the Cook County Recorder required only $31.00; Chicago Title allegedly retained the $14.00 overcharge. *See id.* at 624-25. Additionally, Chicago Title charged Hall $45.00 to record her mortgage. *See id.* at 625. However, with respect to Hall, the Cook County Recorder required only $37.00; Chicago Title allegedly retained an $8.00 overcharge. *See id.* Pursuant to Federal Rule of Civil Procedure 12(b)(6), Chicago Title filed a motion to dismiss, arguing that the plaintiffs failed to state any "facts tending to prove that Chicago Title gave an unearned fee to a third party or received an unearned fee from a third party, an essential element of" a section 2607(b) claim. *Id.* The district court granted Chicago Title's motion, and the Seventh Circuit affirmed. *See id.*

The plaintiffs in *Echevarria* alleged that Chicago Title illegally split the $45.00 recording

fees with a third party, the Cook County Recorder, by paying it a portion of the fees and retaining the overcharges for itself. 256 F.3d at 626. However, the Seventh Circuit, relying on its previous opinions in *Durr v. Intercounty Title Co.*, 14 F.3d 1183 (7th Cir. 1994), *cert. denied*, 513 U.S. 811 (1994) and *Mercado v. Calumet Federal Savings & Loan Ass'n*, 763 F.2d 269 (7th Cir. 1985), held that Chicago Title at most received a windfall when it pocketed the $26.00 overcharge, which did not violate RESPA section 2607(b):

> [t]he Cook County Recorder received no more than its regular recording fees and it did not give to or arrange for Chicago Title to receive an unearned portion of these fees. The County Recorder has not engaged in the third party involvement necessary to state a claim under RESPA [section 2607(b)].

*Id.* Further, the court stated that:

> [w]e cannot employ a legal fiction to treat Chicago Title as both the giver and receiver of unearned fees because it acted in the same legal capacity when it overcharged plaintiffs and when it retained the monies in excess of the recording fees . . . If we subjected to RESPA liability a title company that kept an overcharge without requiring allegations that it shared an unearned fee with a third party, we would radically, and wrongly, expand the class of cases to which RESPA [section 2607(b)] applies.

*Id.* at 626-27. Accordingly, under the Seventh Circuit's holding in *Echevarria*, because LandAmerica likewise did not share any unearned fees with a third party, Plaintiffs cannot state a cognizable claim against LandAmerica under section 2607(b).

Shortly after the Seventh Circuit's decision in *Echevarria*, the Fourth Circuit agreed with its holding. In *Boulware v. Crossland Mortgage Corp.*, the Fourth Circuit rejected an amicus brief authored by the Department of Housing and Urban Development ("HUD") and held that "the view that [section 2607(b)] only applies when there is a kickback or split with a third party is actually the view that is consistent with RESPA's stated purposes." No. 01-2318, 2002 U.S. App. LEXIS 9649, at * 14. The plaintiff in *Boulware* alleged that Crossland violated section 2607(b) by charging her $65.00 for a credit report, which cost it only $15.00 to obtain, such that Crossland retained a $50.00

overcharge. *See id.* at *3. The trial court dismissed the complaint for failure to state a claim because she "did not allege any split or kickback of the overcharge from Crossland to a third party." *Id.* at *2. Relying on Seventh Circuit case law, the Fourth Circuit affirmed, explaining:

> [t]he plain language of [section 2607(b)] makes clear that it does not apply to every overcharge for a real estate settlement service and that [section 2607(b)] is not a broad price-control provision. Therefore, [section 2607(b)] only prohibits overcharges when a "portion" or "percentage" of the overcharge is kicked back to or "split" with a third party . . . By using the language "portion, split, or percentage," Congress was clearly aiming at a sharing arrangement rather than a unilateral overcharge.

*Id.* at *2, 5. Further, the court stated that "[i]f Congress had intended [section 2607(b)] to sweep as broadly as [the plaintiff] proposes, it could easily have written [it] to state that 'there shall be no markups or overcharges for real estate settlement services.'" *Id.* at *13. Likewise, under the Fourth Circuit's holding in *Boulware*, Plaintiffs' section 2607(b) claim must be dismissed.

**2. Regulation X Does Not Give Plaintiffs a Claim.**

The plaintiffs in *Echevarria* also alleged that HUD's 1992 amendment to 24 C.F.R. § 3500.14(c) ("Regulation X"), which became effective after the Seventh Circuit's decisions in *Durr* and *Mercado*, eliminated the need for them to plead facts suggesting that Chicago Title split an unearned fee with a third party, such that all unearned fees became actionable under RESPA section 2607(b). *Id.* at 627.

Regulation X states:

> (c) No split of charges except for actual services performed. No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed. A charge by a person for which no or nominal services are performed or for which duplicative fees are charged is an unearned fee violates this section. The source of the payment does not determine whether or not a service is compensable. Nor may the prohibitions of this part be avoided by creating an arrangement wherein

the purchaser of services splits the fee.[1]

24 C.F.R. § 3500.14(c) (2000). The Seventh Circuit read Regulation X as a whole and took into account its heading, "No split of charges except for actual services performed," added by HUD's 1992 amendment, and HUD's stated purpose in amending Regulation X, "'to clarify what constitutes payments and services.'" *Echevarria*, 256 F.3d at 628 (quoting 57 Fed. Reg. 49,605 (Nov. 2, 1992)). As such, the court held that Regulation X "is not ambiguous" and that "[n]either HUD's purpose nor the new language explicitly refers to expanding liability under RESPA [section 2607(b)], and given the repeated reference to fee splitting and the purpose of the amendment, we hold that the amendments to Regulation X did not eliminate the requirement of third party fee splitting." *Id.* at 628-29 (relying, in part, on *Willis v. Quality Mortgage U.S.A., Inc.*, 5 F. Supp. 2d 1306, 1308-09 (M.D. Ala. 1998)).

The plaintiff in *Boulware* likewise attempted to salvage her RESPA claim by relying on Regulation X. *See* 2002 U.S. Dist. LEXIS 9649, at * 11. However, in response to the plaintiff's argument, the Fourth Circuit held that the "text of the statute controls." *Id.* Accordingly, because Regulation X does not expand RESPA section 2607(b) liability to all instances where an unearned fee is charged, but rather, maintains RESPA section 2607(b)'s requirement of third party fee splitting, Plaintiffs likewise cannot state a cognizable claim against LandAmerica under Regulation X, and this claim should be dismissed.

**3. HUD's Post-*Echevarria* Policy Statement Does Not Change the Law.**

HUD has not formally engaged in any rulemaking that would make overcharges unlawful. Rather, since *Echevarria*, HUD issued a responsive policy statement. *See* 66 Fed. Reg. 53,052 (Oct.

---

[1] HUD's 1992 amendment to Regulation X added the heading, "No split of charges except for actual services performed," and the second, third, and fourth sentences quoted above. *See* 24 C.F.R. 3500.14(b) (1992).

15, 2001). HUD stated that it disagrees with *Echevarria* and "specifically interprets section [2607(b)] as not being limited to situations where at least two persons split or share an unearned fee for the provision to be violated." *Id.* at 53,057. Thus, according to HUD, "a settlement service provider may not mark-up the cost of another provider's services without providing additional settlement services . . . to justify the charge." *Id.* at 53,059. However, HUD's latest policy statement is entitled to "no extra deference," such that it does not create any claim under RESPA section 2607(b) or Regulation X for which LandAmerica can be held liable. *Echevarria*, 256 F.3d at 629.

Specifically, in determining what amount of deference to afford an agency's policy statement, the United States Supreme Court has stated that "[i]nterpretations such as those in opinion letters – like interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law – do not warrant *Chevron*-style deference."[2] *Christensen*, 529 U.S. at 587; *see also Reno v. Koray*, 515 U.S. 50, 61 (1995) (holding that an internal agency guideline, which is not "subject to the rigors of the Administrative Procedure Act, including public notice and comment," is entitled only to "some deference"); *EEOC v. Arabian Am. Oil Co.*, 499 U.S. 244, 256-58 (1991) (stating that interpretive guidelines do not receive *Chevron* deference); *Martin v. Occupational Safety & Health Review Comm'n*, 499 U.S. 144, 157 (1991) (holding that interpretative rules and enforcement guidelines are "not entitled to the same deference as norms that derive from the exercise of the Secretary's delegated lawmaking powers"). Instead, agency interpretations, which have not been arrived at through formal agency adjudication or notice-and-comment rulemaking, are "'entitled to respect,'" but only to the extent that those interpretations have the "'power to persuade.'" *Id.* (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944));

[2] Under *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, a court must give effect to an agency's regulation containing a reasonable interpretation of a statute that either does not directly address the precise question at issue or is ambiguous. 467 U.S. 837, 842-44 (1984).

*see Arabian Am. Oil Co.*, 499 U.S. at 256-58.

With respect to Regulation X, in *Krzalic v. Republic Title Co.*, another case involving alleged RESPA violations, the court addressed HUD's latest policy statement, stating that

> prior to *Echevarria*, HUD had issued policy statements . . . Those statements failed to persuade the *Echevarria* court . . . and this new statement likewise does nothing to change the legal landscape for cases such as this within our Circuit. Accordingly, we conclude that *Echevarria* still provides the controlling law for actions that do not involve an unearned fee split by two or more parties.

No. 01 C 9979, 2002 U.S. Dist. LEXIS 8832, at * 5-6 (N.D. Ill. May 16, 2002). Accordingly, HUD's latest policy statement, like those addressed in *Echevarria*, is not persuasive because Regulation X and the enabling statute unambiguously limit section 2607(b) liability under RESPA to fee splitting arrangements. Therefore, as the Court in *Echevarria* concluded, absent a formal commitment by HUD, *i.e.*, one created through agency adjudication or notice-and-comment rulemaking, the Seventh Circuit's case law regarding RESPA section 2607(b) remains valid. 256 F.3d at 630. As such, Plaintiffs cannot state a RESPA section 2607(b) claim against LandAmerica by relying on HUD's latest policy statement.

**B. <u>No Independent Basis to Assert Jurisdiction Over Plaintiffs' State Law Claims</u>.**

Plaintiffs do not allege that diversity jurisdiction under 28 U.S.C. § 1332 exists. (Complaint, p. 1.) Therefore, as to LandAmerica, the only independent basis for the Court's jurisdiction over this action is Plaintiffs' RESPA claim. If this Court, however, dismisses that claim, pursuant to the arguments asserted above, no independent jurisdictional basis will exist over Plaintiffs' remaining state law claims against LandAmerica.

In such a situation, 28 U.S.C. § 1367(c)(3) advises that a court "may decline to exercise supplemental jurisdiction" over the remaining state law claims. Indeed, in the Seventh Circuit, it is the general rule that a district court should not continue to exercise supplemental jurisdiction when

all of the federal claims have been dismissed. *See Graehling v. Village of Lombard,* 58 F. 3d 295, 299 (7th Cir. 1995) (stating that dismissal of state claims "is the normal approach under the supplemental jurisdiction when the federal claims are resolved quickly"); *Wright v. Assoc. Ins. Cos.*, 29 F. 3d 1244, 1251 (7th Cir. 1994) (stating that "the general rule is that, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state law claims"). Accordingly, this Court should likewise dismiss Plaintiffs' remaining state law claims against LandAmerica.

**C. Plaintiffs Cannot State a Claim Under the <u>Consumer Fraud Acts of Illinois and Virginia</u>.**

**1. <u>Illinois' Consumer Fraud Act Does Not Apply to Simple Contract Actions</u>.**

Plaintiffs' claim under Illinois' Consumer Fraud Act fails because the Act does not apply to simple breach of contract actions. *See Zankle v. Queen Anne Landscaping*, 311 Ill. App. 3d 308, 312 (2d Dist. 2000). In *Zankle*, a homeowner claimed that his landscaper violated the Act by misrepresenting the completion date of the project, whether a rock picker would be used to clear rocks, the number of fertilization treatments that would be applied, and that the installation of his lawn would be completed in a workmanlike manner. *Id.* at 312. The parties had executed a written contract relating to the services to be provided by the landscaper. *See id.* at 312. The trial court granted a directed verdict in favor of the landscaper, concluding that the homeowner did not establish a prima facie case of consumer fraud. *See id.* at 311-12. The appellate court affirmed, holding that the landscaper's alleged "misrepresentations" constituted nothing more than unfulfilled promises made pursuant to the parties' contractual relationship. *See id.* at 312. In so holding, the court stated that "it is settled that the Consumer Fraud Act was not intended to apply to every contract dispute or to supplement every breach of contract claim with a redundant remedy." *Id.*

Here, Plaintiffs' consumer fraud claim is based solely on LandAmerica's charges for

recording fees. Such fees are listed on Plaintiffs' HUD-1 closing statement, which document constitutes a contractual agreement between the parties. As such, Plaintiffs are attempting to transform a simple contract claim into one for consumer fraud. However, without alleging a deceptive act or practice, Plaintiffs' claim is purely contractual in nature and does not give rise to a claim under Illinois' Consumer Fraud Act.

### 2. Plaintiffs Fail to Plead their Consumer Fraud Claims with Sufficient Particularity.

Additionally, a claim under the Illinois Consumer Fraud Act must be pleaded with the same particularity and specificity as that required for common law fraud claims. *See Connick v. Suzuki Motor Co., Ltd.*, 174 Ill. 2d 482, 497 (1996). To state a claim for common law fraud, a plaintiff must allege, at a minimum, facts that establish the "who, what, when, and where" of the alleged misrepresentation. *Hirsch v. Feuer*, 299 Ill. App. 3d 1076, 1085-87 (1st Dist. 1998). However, in the present case, Plaintiffs only generally allege that "[t]he disclosures on the TILA statement, notice of right to cancel, and HUD-1 were not accurate," without specifying which disclosures they are referring to. (Complaint, p. 3.)

Further, Plaintiffs fail to specify what actions were allegedly taken by which defendant. For example, Plaintiffs state that "Defendants received money as plaintiffs' agent for the purpose of paying property taxes and did not apply the money for that purpose." (Complaint, p. 14.) Courts have routinely rejected attempts to group defendants together for purposes of stating a fraud claim, finding that the plaintiff has not pleaded the claim with sufficient particularity. *See, e.g., Vicom v. Harbridge Merchant Serv., Inc.*, 20 F.3d 771, 777-78 (7th Cir. 1993) (stating that "in a case involving multiple defendants . . . 'the complaint should inform each defendant of the nature of his alleged participation in the fraud.' . . . We previously have rejected complaints that have 'lumped together' multiple defendants" (citations omitted)). Accordingly, for this additional reason, Plaintiffs

have failed to state a claim against LandAmerica under Illinois' Consumer Fraud Act.

Likewise, Plaintiffs fail to adequately plead their claim under Virginia's Consumer Protection Act. While that statute does not require the same level of particularity and specificity as that required for common law fraud claims, it must be clear what misrepresentation was allegedly made. *See Debrew v. Lexus*, 42 Va. Cir. 380, 382 (1997). Further, a party must do more than allege vague, indefinite, and conclusory allegations, as Plaintiffs have done here. *See id.* at 383. As such, Plaintiffs have also failed to state a claim against LandAmerica under Virginia's Consumer Protection Act.

**3. LandAmerica's Compliance with RESPA Exempts it from Liability for Consumer Fraud.**

Finally, as detailed above, Plaintiffs cannot state a RESPA claim against LandAmerica. Plaintiffs therefore cannot state a claim against LandAmerica under either Illinois' or Virginia's consumer protection statutes. Specifically, section 815 ILCS 505/10b of Illinois' Consumer Fraud Act states:

> [n]othing is this Act shall apply to any of the following: (1) Actions or transactions specifically authorized by laws administered by any regulatory body or officer acting under statutory authority of this State or the United States.

In analyzing this section, the Illinois Supreme Court stated that "[w]e conclude that defendant's compliance with RESPA in this case renders defendant exempt from liability under the Consumer Fraud Act." *Weatherman v. Gary-Wheaton Bank of Fox Valley, N.A.*, 186 Ill. 2d 472, 488 (1999). Accordingly, because Plaintiffs are unable to state a claim under RESPA, they are also unable to state a claim under the Illinois Consumer Fraud Act.

Likewise, Virginia's Consumer Protection Act states that it shall not apply to:

> [a]ny aspect of a consumer transaction which aspect is authorized under laws or regulations of this Commonwealth or the United States, or the formal advisory opinions of any regulatory body or official of this Commonwealth or the United

States.

Va. Code § 59.1-199. In *Smith v. United States Credit Corp.*, the court held that because the transaction at issue did not violate Virginia's lending and disclosure regulations, Virginia's Consumer Protection Act was "inapplicable." 626 F. Supp. 102, 103 (E.D. Va. 1985). Accordingly, because Plaintiffs are unable to state a claim under RESPA, they are also unable to state a claim under the Virginia Consumer Protection Act.

**D. Plaintiffs Cannot State a Claim for Money Had and Received.**

**1. Plaintiffs Failed to Plead that LandAmerica Itself Retained any Money.**

In Count IV of their Complaint, Plaintiffs purport to assert a claim against both GAMC and LandAmerica for "money had and received," yet the allegations of this count state that Defendants were "unjustly enriched" by allegedly retaining surplus funds collected to record Plaintiffs' mortgage and release. (Complaint, pp. 3-4, 12.) Regardless of whether Plaintiffs intended this claim to be one for money had and received or for unjust enrichment, Plaintiffs have failed to state a claim against LandAmerica.

To state a claim for money had and received, Plaintiffs must allege that LandAmerica "received money which in equity and good conscience belongs to the plaintiff." *Snyder v. Dunn*, 265 Ill. App. 3d 891, 895 (1st Dist. 1994). Similarly, to state a claim for unjust enrichment, Plaintiffs must allege that LandAmerica "unjustly retained a benefit to the plaintiff's detriment." *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill. 2d 145, 160 (1989). Plaintiffs' claim, however, fails under either theory because they do not allege that LandAmerica itself retained any of the recording fees. Instead, Plaintiffs improperly lump both LandAmerica and GAMC together, alleging that "GAMC and LAOS" collected the recording fees. (Complaint, p. 3.) This allegation does not show that LandAmerica itself retained any of the recording fees, and, absent such an allegation,

LandAmerica should be dismissed from Count IV.

**2. Plaintiffs's Relationship Is Governed by an Express Contractual Relationship.**

In addition, Count IV should be dismissed because Plaintiffs cannot maintain a claim for either money had and received or unjust enrichment where their allegations establish that their claim is governed by an express contractual relationship. A claim for money had and received can only be maintained "either under the theory of an implied contract or under the theory of a quasi contractual obligation." *Kaiser v. Fleming*, 315 Ill. App. 3d 921, 925 (2nd Dist. 2000). Here, Plaintiffs have alleged that LandAmerica collected fees from them pursuant to the HUD-1 settlement statement that disclosed such fees. (Complaint, p. 3, Ex. D.) The collection of the alleged fees is therefore governed by the parties' express contractual relationship, which is incorporated into the written document that disclosed the fees. There is no suggestion that Plaintiffs' allegations involve the payment of funds pursuant to an implied or quasi-contractual relationship, or any other representation or relationship other than the written disclosure in the HUD-1.

Likewise, the existence of a written contract precludes Plaintiffs' claim for unjust enrichment. *See Perez v. Citicorp Mortgage, Inc.*, 301 Ill. App. 3d 413, 425 (1st Dist. 1998) (stating that "[t]he theory of unjust enrichment is based on a contract implied in law and, therefore, does not apply where there is a specific contract that governs the relationship of the parties"); *F.H. Prince & Co. v. Towers Fin. Corp.*, 275 Ill. App. 3d 792, 804-05 (1st Dist. 1995) (stating that "[s]ince the doctrine of unjust enrichment presents an implied or quasi-contract claim, where there is a specific contract that governs the relationship of the parties, the doctrine has no application"). Because Plaintiffs' allegations with respect to the collection of recording fees are governed by an express contractual relationship, Plaintiffs' claim, be it for either money had and received or unjust enrichment, should be dismissed.

**E. Plaintiffs Cannot State a Claim for Breach of Fiduciary Duty.**

In Count VI, Plaintiffs claim that LandAmerica breached a fiduciary duty owed to them by failing to timely remit a $1,286 property tax payment, apparently collected at closing, to the appropriate government official. (Complaint, pp. 4, 14.) Plaintiffs allege that GAMC and LandAmerica received the funds "as plaintiffs' agent" for the purpose of paying the taxes. (Complaint, p. 14.) However, Plaintiffs do not allege facts showing the existence or scope of any fiduciary relationship. Therefore, this claim should also be dismissed.

To state a claim for breach of fiduciary duty, Plaintiffs must allege *facts* showing the existence of a fiduciary relationship. *See Neuma, Inc. v. E.I. DuPont de Nemours & Co.*, 9 F. Supp. 2d 952, 953-54 (N.D. Ill. 1998). Merely alleging the conclusion that a fiduciary relationship exists does not satisfy this requirement. *See id.* Here, Plaintiffs pleaded no facts showing a fiduciary relationship between them and LandAmerica. Instead, they merely asserted the legal conclusion that LandAmerica and GAMC, together, somehow "received money as plaintiffs' agent for purposes of paying property taxes." (Complaint, p. 14.) This, however, is insufficient to state any claim against LandAmerica. *See Peterson v. H&R Block Tax Servs., Inc.*, 971 F. Supp. 1204, 1213 (N.D. Ill. 1997) (stating that "a plaintiff must still plead facts which, if proved, could establish the existence of an agency relationship").

Additionally, the fact that Plaintiffs alleged that LandAmerica acted as a "closing agent" does not save their claim for breach of fiduciary duty. (Complaint, p. 2.) An escrow agent only owes a fiduciary duty to the party making the deposit "to act only in accordance with the escrow instructions." *Fantino v. Lenders Title & Guar. Co.*, 303 Ill. App. 3d 204, 208 (1st Dist. 1999). Plaintiffs do not allege what, if any, escrow instructions existed with respect to the tax payment, or whether GAMC or LandAmerica was obligated to make that payment. Moreover, Plaintiffs do not

allege that either Defendant failed to make the tax payment, only that the payment was not "timely remitted." (Complaint, p. 4.) To the extent Plaintiffs allege any duty to remit the payment, they do not allege that there were any instructions as to the timing of the payment that could be the basis for a claim for breach of those instructions. Because there are no allegations of an express agency agreement or of any escrow instructions that could be the basis for a claim for breach of LandAmerica's duty as escrow agent, Plaintiffs' claim for breach of fiduciary duty against LandAmerica should also be dismissed.

## III. CONCLUSION

For the foregoing reasons, LandAmerica requests that the Court dismiss the claims against it with prejudice.

Respectfully submitted,

LANDAMERICA ONESTOP, INC.

By: ______________________
One of Its Attorneys

Albert E. Fowerbaugh, Jr.
John F. Kloecker
LORD, BISSELL & BROOK
115 South LaSalle Street
Chicago, Illinois 60603
Telephone: (312) 443-1871 (AEF)
Facsimile: (312) 896-6571 (AEF)

Mark T. Davenport
Keith R. Verges
Amanda M. Inabnett
FIGARI DAVENPORT & GRAVES, L.L.P.
3400 Bank of America Plaza
901 Main Street, LB 125
Dallas, Texas 75202
Telephone: (214) 939-2000
Facsimile: (214) 939-2090

**CERTIFICATE OF SERVICE**

I, the undersigned attorney, hereby certify I caused Defendant LandAmerica OneStop, Inc.'s Memorandum in Support of Its Motion to Dismiss to be served upon:

Bonita L. Stone
Josh J. Moss
Fritz E. Berckmueller
KATTEN, MUCHIN, ZAVIS, ROSENMAN
525 West Monroe Street, Suite 1600
Chicago, IL 60661

Francis R. Greene
EDELMAN, COMBS & LATTURNER, LLC
120 South LaSalle Street, 18th Floor
Chicago, IL 60603

by causing same to be delivered via U.S. mail this 12th day of July, 2002.

John F. Kloecker